ABRAHAM, FRUCHTER
& TWERSKY, LLP
TAKEO A. KELLAR (Bar No. 234470)
*tkellar@aftlaw.com*
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel. (858) 764-2580
Fax (858) 764-2582

Counsel for Plaintiff and the
Putative Class
*[Additional Counsel Appear on
Signature Page]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| ELLEN STOKAR,<br><br>               Plaintiff,<br><br>     v.<br><br>STEADFAST APARTMENT REIT. INC.: RODNEY F. EMERY: ELLA NEYLAND: ANA MARIE DEL RIO: G. BRIAN CHRISTIE: THOMAS PURCELL: KERRY D. VANDELL: NED W. BRINES, AND; STEPHEN R. BOWIE,<br><br>          Defendants. | Case No.: 8:21-cv-1724<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |

Plaintiff Ellen Stokar ("Plaintiff"), by and through her undersigned counsel, alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Independence Realty Trust, Inc., ("IRT" or "Parent"), with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of the press releases and other publicly available information about Steadfast Apartment REIT, Inc.

("STAR" or the "Company"); (c) review of news articles, shareholder communications, and postings on STAR's website; and (d) review of other publicly available information.

## NATURE OF THE ACTION

1.      Plaintiff brings this action to cure violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78n(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of STAR with and into IRT.

2.      On July 26, 2021, STAR's board of directors (the "Board") caused STAR to enter into an agreement and plan of merger (the "Merger Agreement") with Parent.  The transaction referred to in the Merger Agreement (*i.e.,* STAR will become a wholly owned subsidiary of IRT) is referred to herein as the "Merger" or the "Proposed Transaction."

3.      Under the terms of the Merger Agreement, each share of STAR common stock issued and outstanding will be converted into the right to receive 0.905 shares of IRT common stock (the "Merger Consideration").   The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the Company's shareholders.  STAR expects the Proposed Transaction to close in the fourth quarter of 2021.

4.      On September 28, 2021, to convince STAR's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a preliminary proxy statement, which was filed by IRT with the SEC on a Form S-4 registration statement that also serves as a proxy statement with respect to STAR (the "Proxy Statement").

5.      The Proxy Statement, as detailed below, fails to disclose material information necessary for STAR's shareholders to properly assess the fairness of the Merger, thereby rendering certain statements in the Proxy Statement materially

incomplete and misleading.  It is imperative that the material information that has been omitted from the Proxy Statement be disclosed to STAR's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Section 14(a) of the Exchange Act and Rule 14a-9.

6.     Plaintiff seeks to enjoin Defendants from holding a shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to STAR's shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

8.     Personal jurisdiction exists over each Defendant because Defendants conduct business in this District or are individuals who either present in this District for jurisdictional purposes or having sufficient minimum contacts within this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.

9.     In connection with the wrongs alleged herein, Defendants used the mails and the means or instrumentalities of interstate commerce.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391, because Defendants are found or transact business in this District.

## PARTIES

11.    Plaintiff is, and at all relevant times has been, a STAR shareholder.

12.    Defendant Steadfast Apartment REIT, Inc. is a non-traded Real Estate Investment Trust ("REIT") that closed its initial public offering on March 24, 2016. STAR is headquartered at 18100 Von Karman Avenue, Suite 200, Irvine, California 92612.

13.    Defendant Rodney F. Emery is, and at all times relevant to this action has been, a member of the Board as well as the Chief Executive Officer of the Company.

14.    Defendant Ella Neyland is, and at all times relevant to this action has been, a member of the Board as well as the President of the Company.

15.    Defendant Ana Marie del Rio is, and at all times relevant to this action has been, a member of the Board.

16.    Defendant G. Brian Christie is, and at all times relevant to this action has been, a member of the Board.

17.    Defendant Thomas Purcell is, and at all times relevant to this action has been, a member of the Board.

18.    Defendant Kerry D. Vandell is, and at all times relevant to this action has been, a member of the Board.

19.    Defendant Ned W. Brines is, and at all times relevant to this action has been, a member of the Board.

20.    Defendant Stephen R. Bowie is, and at all times relevant to this action has been, a member of the Board.

21.    The Defendants named in ¶¶13-20 are collectively referred to herein as the "Individual Defendants" and, with STAR as "Defendants".

## SUBSTANTIVE ALLEGATIONS

**A.** **Background & Insiders' Interests in the Proposed Transaction**

22.     According to the Proxy Statement, STAR owns and operates a diverse portfolio of real estate investments, primarily in the multifamily sector located throughout the United States and, as of June 30, 2021, STAR owned and managed 70 multifamily properties comprising a total of 21,936 apartment homes and three parcels of land held for the development of apartment homes.

23.     STAR paid dividends per share of $0.90 in 2020 and, while its stock does not trade publicly, as of June 30, 2021, its book value per share was $8.36 as compared with $7.07 for IRT. *See* Proxy Statement at 21.

24.     After markets closed on July 26, 2021, via a joint press release with IRT, STAR disclosed that it had entered into the Merger Agreement.

25.     The following chart, based upon page 95 of the Proxy Statement, shows some of the potential accelerated vesting of equity as a result of the Proposed Transaction:

| Name | Outstanding STAR Restricted Shares | Estimated Value of Accelerated Vesting of Unvested Restricted Shares ($s) |
|---|---|---|
| Rodney F. Emery | — | — |
| Ella S. Neyland | 44,016.41 | 757,082 |
| Tim Middleton | 44,016.41 | 757,082 |
| Gustav Bahn | 32,559.70 | 560,027 |
| Jason Stern | 25,993.72 | 447,092 |
| David Miller | 16,922.94 | 291,075 |
| Tiffany Stanley | 20,849.03 | 358,603 |
| Ana Marie del Rio | — | — |
| Kerry D. Vandell | 23,076.64 | 181,987 |
| G. Brian Christie | 23,076.64 | 181,987 |
| Thomas H. Purcell | 23,076.64 | 181,987 |

| | | |
|---|---|---|
| Ned W. Brines | 13,080.64 | 196,323 |
| Stephen R. Bowie | 13,080.64 | 196,323 |

26.     The following chart, based upon page 97 of the Proxy Statement, shows some of the potential payments and benefits to STAR's Named Executive Officers in connection with the Proposed Transaction:

| Named Executive Officer | Cash ($) | Equity($) | Perquisites/Benefits($) | Total ($) |
|---|---|---|---|---|
| Rodney F. Emery | — | — | — | — |
| Ella S. Nevland | 2,194,000 | 757,082 | 10,872 | 2,961,954 |
| Tim Middleton | 2,194,000 | 757,082 | 27,468 | 2,978,550 |
| Gustav Bahn | 1,950,000 | 560,027 | 18,646 | 2,528,673 |
| Jason Stern | 1,950,000 | 447,092 | 27,468 | 2,424,560 |

## B.     Material Omissions in the Proxy Statement

27.     Defendants were obligated to carefully review the Proxy Statement to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement omits material information that is necessary for STAR's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction.

### 1.     Material Omissions About the Proposed Transaction's Background

28.     The Background of the Merger section of the Proxy Statement (at p.46) explains that "[o]n October 20, 2020, STAR and Party A entered into a mutual non-disclosure agreement governing the exchange of information between the parties in connection with a potential transaction."

29.     The Proxy Statement omits whether that confidentiality agreement included a don't-ask-don't-waive ("DADW") standstill provision that precludes Party A from making a topping bid for STAR following the execution of the Merger Agreement.

30.     The failure to plainly disclose or disclaim the existence of DADW provisions creates confusion as to whether Party A can make a superior proposal.  If

that non-disclosure agreement contains a DADW provision, then Party A cannot make a superior proposal because, to make a superior proposal it would have to directly or indirectly request a waiver to do so.

31.     The Proxy Statement also represents that "on July 16, 2021, STAR received a stockholder demand letter seeking an investigation and remedial action relating to the Internalization Transaction (the 'Demand Letter')."

32.     The Proxy Statement, however, fails to explain whether any investigation has taken place, whether the Company has any viable claims related to the Demand Letter, the value of such claims (if any), the targets of such claims, and whether any such claims would be extinguished by the Proposed Transaction.

33.     The omission of the foregoing material information renders the Proxy Statement misleading, leaving Shareholders unable to discern (i) whether Party A can make a topping bid for the Company and (ii) whether the Company has any claims relating to the Demand Letter that are unaccounted for in the financial analyses discussed below.

### 2.     Material Omissions Relating to Financial Projections

34.     The Proxy Statement discloses three key non-generally accepted accounting principles ("GAAP") measures of STAR's financial results:  net operating income ("NOI"), earnings before interest, tax expense, depreciation and amortization ("EBITDA"), and funds from operations ("FFO").

35.     These metrics are not recognized measures under GAAP.  Indeed, the Proxy Statement represents (on page 89) that "IRT and STAR calculate certain non-GAAP financial metrics, including NOI, EBITDA and FFO, using different methodologies. Consequently, the financial metrics presented in each company's prospective financial information disclosures and the financial metrics derived from such prospective financial information and presented in other sections of this joint

proxy statement/prospectus with respect to the financial analyses of the financial advisors to IRT and STAR may not be directly comparable to one another."

36.     To avoid misleading shareholders with non-GAAP financial measures in business combinations, publicly traded companies must reconcile non-GAAP financial measures with the most comparable GAAP measurement.

37.     The Proxy Statement must be supplemented to provide Shareholders with the necessary line-item projections for the metrics used to calculate the disclosed non-GAAP metrics or to reconcile those projections to the most comparable GAAP measures.

### 3.     Material Omissions Relating to Financial Analyses

38.     The Proxy Statement represents that STAR engaged RBC Capital Markets, LLC ("RBC") as a financial advisor to advise it and the Board with respect to the Proposed Transaction.

39.     The Proxy Statement explains that RBC presented the Board with financial analyses supporting its opinion as to the fairness of the Proposed Transaction from a financial point of view to STAR's shareholders.  However, the Proxy Statement's descriptions of those analyses omit the following material information, disclosure of which would significantly alter the total mix of information available to shareholders, preventing STAR's shareholders from determining what weight, if any, to place on the analyses when voting with respect to the Merger:

a.     With respect to RBC's *Selected Public Companies Analyses* of STAR and IRT, the Proxy Statement omits: (i) the specific metrics observed for each selected company and (ii) the reference ranges used for STAR and IRT for each analyzed metric, and the specific inputs and assumptions used to calculate them; (iii) the specific inputs and assumptions used to determine the estimated EBITDA multiples applied to STAR and to IRT; and; (iv) whether RBC used STAR's and

1   IRT's differently calculated FFO and EBITDA projections (*see supra* ¶33) or
2   whether RBC made adjustments so that the financial metrics were calculated with
3   the same methodology.

4       b.    With respect to RBC's *Discounted Cash Flow Analyses* of STAR
5   and IRT, the Proxy Statement omits: (i) the terminal values utilized for STAR and
6   IRT; (ii) the inputs and assumptions underlying the use of one-year forward
7   EBITDA multiples for STAR and IRT; and, (iii) the inputs and assumptions
8   underlying the discount rates ranging from 7.75% to 8.75% for STAR and IRT.
9   These inputs and assumptions are particularly important here because the values
10  used differ materially from those used in a discounted cash flow analysis done by
11  BMO Capital Markets Corp. ("BMO"), which served as IRT's financial advisor.

12      c.    With respect to RBC's *Relative Contributions Analysis* of STAR
13  and IRT, the Proxy Statement represents that RBC "reviewed the relative
14  contributions of STAR and IRT to the combined company's equity value based on
15  calendar years 2021 and 2022 estimated EBITDA and estimated FFO. Financial data
16  of STAR was based on financial projections and other estimates of STAR
17  management and financial data of IRT was based on financial projections and other
18  estimates of IRT management." The *Relative Contributions Analysis*, however,
19  omits whether RBC used differently calculated FFO and EBITDA projections (*see*
20  *supra* ¶33) or made adjustments so that the financial metrics were calculated with
21  the same methodology, rendering shareholders unable to decide how much, if any,
22  weight to give that analysis.

23      d.    With respect to RBC's review of publicly available research
24  analysts' forward stock price targets for IRT common stock, the Proxy Statement
25  omits the identities and price targets set by the equity research analysts.

26
27
28

### 4. Material Omissions Relating to RBC's Potential Conflicts of Interest

40. The Proxy Statement states, in part, (on page 49) that in connection with RBC's reengagement by the Company in connection with the Proposed Transaction, RBC "provided the STAR Board with certain disclosures regarding RBC Capital Markets' material relationships with STAR and IRT."

41. The Proxy Statement, however, omits the nature of RBC's material relationship with IRT. *See* Proxy Statement at 86.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

<u>COUNT I</u>

<u>AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER</u>

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(a)(1) makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. §78n(a)(1).

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) provides that communications with shareholders in a recommendation statement shall not

contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

46.    Defendants have issued the Proxy Statement with the intention of soliciting shareholders' support for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Proxy Statement, which omits critical information regarding, among other things, the background of the transaction and financial projections for the Company.

47.    In so doing, Defendants omitted material facts necessary to make the statements made not misleading.  Each Defendant, by virtue of their roles as officers and/or directors, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48.    Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.  Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49.    Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the Proxy Statement materially incomplete and misleading.  Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the

Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a proxy statement by corporate insiders omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors.

51.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Enjoining Defendants and all persons acting in concert with them from proceeding with any shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy Statement;

(b)     In the event the Proposed Transaction closes, directing Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

(c)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

1
2
        (d)    Granting such other and further relief as this Court may deem just and proper.

3
                  **ABRAHAM, FRUCHTER & TWERSKY, LLP**

4
Dated: October 18, 2021     By:   */s/ Takeo A. Kellar*
5
                   TAKEO A. KELLAR
6
    11622 El Camino Real, Suite 100
    San Diego, CA 92130
7
    Tel: (858) 764-2580
    Fax: (858) 764-2582
8
               -AND-
9
    MICHAEL J. KLEIN
10
    (*mklein@aftlaw.com*)
    450 Seventh Ave, 38th Floor
11
    New York, NY 10023
    Tel: (212) 279-5050
12
    Fax: (212) 279-3655

COMPLAINT     -13-